Copy

LAURIE MCPHILLIPS  6P  R 2007040529
Will County Recorder    Page 1 of 6

PC2 Date 03/15/2007    Time 11:32:43
Recording Fees:                26.75
IL Rental Hsng Support Prog:   10.00

Recorder's Use

This instrument prepared by:

JENNIFER A STEINER
1701 N LARKIN AVE STE 503
CRESTHILL, IL 60403-1883

**OPEN-END MORTGAGE**

THIS OPEN-END MORTGAGE ("Security Instrument") is given _____03/14/07_____. The mortgagor is
MONTH/DAY/YEAR
MIKUZIS, ZIGMAS AND MIKUZIS, DONNA, NOT AS TENANTS IN COMMON OR

AS JOINT TENANTS BUT AS TENANTS BY THE ENITRETY _____MARRIED_____
("Borrower").                                                                (indicate marital status)

This Security Instrument is given to AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.,
_____ which is organized and existing under the laws of Illinois, and whose
address is 1701 N LARKIN AVE STE 503                    CRESTHILL, IL 60403-1883
Illinois ("Lender"). Borrower may incur indebtedness to Lender in amounts fluctuating from time to time up to the
appraised value of the real estate secured under this Security Instrument, but not exceeding the Credit Limit set by
Lender (initially $ 196000.00 ), which amount constitutes the maximum principal amount that may be secured at
any one time under this Security Instrument. This debt is evidenced by Borrower's Home Equity Line of Credit
Agreement and Disclosure Statement dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable as provided in the Note. This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the security of this Security Instrument; (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note; and (d) the unpaid balances of loan advances made after this Security Instrument
is delivered to the recorder for record. For this purpose, Borrower does hereby mortgage, warrant, grant and convey
to Lender with mortgage covenants, to secure the payment of the foregoing indebtedness of Borrower from time to
time, the following described property located in WILL _____ County, Illinois:
*********SEE SCHEDULE A ****************************
Pin # 06-09-201-023

Prior Instrument Reference: Volume _____, Page _____;

ILX281 (01-15-06) HELOC Real Estate Mortgage          PAGE 1 OF 6          1 of 6

Copy

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. At the request of Lender, Borrower shall begin making monthly payments into an escrow account for the payment of yearly taxes, insurance and other yearly charges imposed upon the Property.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied as provided in the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Note whether or not then due. The 30-day period will begin when the notice is given.

Unless the Note provides otherwise, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payment. If under paragraph 18 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees if and as permitted by applicable law, and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

8. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the even of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fractions: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument whether or not then due.

Unless the Note provides otherwise, any application of proceeds to principal shall not operate to release the liability of the original referred to in paragraphs 1 and 2 or change the amount of such payments.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successor in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waive of or preclude the exercise of any right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.

13. Notices. Any notice to Borrower provided in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or, if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised if the exercise of this option by Lender is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. Borrower's Right to Reinstate. To the extent required by applicable law, Borrower may have the right to have enforcement of this Security Instrument discontinued. Upon reinstatement by Borrower, this Security Instrument and the obligations secured thereby shall remain fully effective as if no acceleration had occurred.

18. Acceleration; Remedies. Except as provided in paragraph 16, if Borrower is in default due to the occurrence of any of the events of default provided in the "DEFAULT; TERMINATION AND ACCELERATION BY LENDER" provision of the Note and a Judicial Foreclosure Proceeding has commenced, Lender shall give Borrower notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 90 days from the date the notice is given to Borrower, by which the default must be cured (unless a court having jurisdiction of a foreclosure proceeding involving the Property; shall have made an express written finding that Borrower has exercised Borrower's right to reinstate the same mortgage within the five (5) years immediately preceding the finding; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees if and as permitted by applicable law and costs of title evidence.

19. Lender in Possession; Assignment of Rents. Upon acceleration under paragraph 18 or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees if and as permitted by applicable law, and then to the sums secured by this Security Instrument. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession," unless Lender shall have entered into and shall remain in actual possession of the Property.

20. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument, Borrower shall pay any recordation costs but shall not be required to pay any other charges.

21. Advances to Protect Security. This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

Copy

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and expressly releases and waives Borrower's right of homestead in the Property. By signing below, N/A _____, the Grantor(s)/spouse(s) of Borrower(s), has/have also executed this instrument solely for the purpose of mortgaging and releasing (and does hereby so release and mortgage) all of such Grantor(s)/spouse(s) rights of homestead in the property.

Witnesses:

_____     _____ (Seal)
JENNIFER A STEINER                             Borrower ZIGMAS MIKUZIS

_____     _____ (Seal)
MICHELLE STEVENS                               Borrower DONNA MIKUZIS

                                               _____ (Seal)
                                               Grantor

                                               _____ (Seal)
                                               Grantor

STATE OF ILLINOIS, County of __COOK_____ ss.

I, the undersigned, a Notary Public, in and for said County and State aforesaid, do hereby certify that ZIGNAS AND DONNA MIKUZIS _____

_____ personally known to me to be the same person(s) subscribed to the foregoing instrument appeared before me this day in person and acknowledged that he/she/they signed, sealed and delivered said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth, including all release and waiver of the right of homestead.

Given under my hand and official seal this __14th__ day of __March____, A.D., __2007__.
                                                         MONTH                    YEAR

_____
Notary Public

My commission expires
__08-01-2007_____
      MONTH DAY, YEAR

OFFICIAL SEAL
KAREN M. TALLON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 08/01/2007

Copy

Schedule A

The following described Real Estate situated in the County of Will, in the State of Illinois, to wit:

Lot 70, in First Addition to Brook Forest North, a subdivision of part of the Northeast 1/4 of Section 9, Township 35 North, Range 9, East of the third Principal Meridian, according to the plat thereof recorded April 13, 1973, as Document No. R73-10408, and Certificate of Correction recorded May 14, 1973, as Document No. R73-13574, in Will County, Illinois.

Subject to 1995 and subsequent years Real Estate Taxes and to easements and restrictions of record.

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois.

PIN# 06-09-201-023